T.C. Memo. 2005-178

UNITED STATES TAX COURT

ROBERT J. MERLO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21538-03.              Filed July 20, 2005.

<u>Brian G. Isaacson</u> and <u>Don Paul Badgley</u>, for petitioner.

<u>Sandra Veliz</u>, for respondent.

MEMORANDUM OPINION

HAINES, <u>Judge</u>:  This case is before the Court on the
parties' cross-motions for partial summary judgment pursuant to
Rule 121.[1]  The issues for decision are:  (1) Whether
petitioner's rights to shares of stock of Exodus Communications,

_____

[1] Unless otherwise indicated, Rule references are to the Tax
Court Rules of Practice and Procedure, and section references are
to the Internal Revenue Code, as amended.

Inc. (Exodus) he acquired during 2000 as a result of exercising an incentive stock option (ISO) were subject to a substantial risk of forfeiture; and (2) whether petitioner is entitled to an alternative tax net operating loss (ATNOL) deduction under section 56(d).

## Background

At the time he filed his petition, petitioner resided in Dallas, Texas.

On July 2, 1999, petitioner commenced work for Service Metrics, Inc. (SMI), as Vice President of Marketing. On July 14, 1999, SMI granted petitioner a stock option to purchase 275,000 shares of SMI common stock.

On November 19, 1999, petitioner entered into an employment agreement with Exodus. On November 23, 1999, Exodus acquired SMI. Pursuant to the reorganization agreement, petitioner's SMI stock option was assumed by Exodus and was converted into an option to purchase shares of Exodus common stock.

According to the Exodus prospectus entitled "Stock Options Granted Under the Service Metrics, Inc. 1998 Stock Option Plan Assumed by Exodus Communications, Inc.":

> The Service Metrics Plan generally does not impose any restrictions on the resale of shares of Common Stock purchased under the Service Metrics Plan. * * *
>
> In accordance with federal law and Exodus' policy prohibiting insider trading, you [petitioner] are always prohibited from trading in Exodus securities when you [petitioner] have inside information.

The Exodus Procedures and Guidelines Governing Securities Trades by Company Personnel (Exodus Procedures) states in pertinent part:

> It is illegal for any Director, officer or employee of Exodus communications, Inc. (the "*Company*"), to trade in the securities of the Company while in the possession of material nonpublic information about the Company. * * *
>
>     *     *     *     *     *     *     *
>
> Violation of this policy or federal or state insider trading or tipping laws by any Director, officer or employee may subject a Director to dismissal proceedings and an officer or employee to disciplinary action by [Exodus] up to and including termination for cause.

The Exodus Procedures contain no requirement that petitioner return the stock to Exodus if he attempted to sell his stock in violation of its insider trading policy.

On August 28, 2000, petitioner and Exodus entered into a Settlement Agreement and General Release, effective as of August 4, 2000, under which petitioner ceased to hold the position of Vice President, Marketing of Exodus. On December 21, 2000, petitioner exercised his ISO to purchase 46,125 shares of Exodus common stock. Petitioner's employment with Exodus terminated on December 31, 2000.

Exodus filed bankruptcy on September 26, 2001.  In a press release dated November 12, 2001, Exodus announced that the company's common stock had no value.

On his 2000 Form, 1040, U.S. Individual Income Tax Return, petitioner included in his alternative taxable income for alternative minimum tax (AMT) purposes $452,025, the excess of the price for Exodus common stock reported on NASDAQ on April 15, 2001, over the price he paid for the stock.  Petitioner did not use the stock's fair market value on the December 21, 2000, ISO exercise date.  Instead, petitioner filed Form 8275-R, Regulation Disclosure Statement, disclosing that he relied on proposed legislation H.R. 2794, 107th Cong., 1st Sess. (2001), then pending in Congress, to use the stock's fair market value on April 15, 2001.  The proposed legislation would have allowed taxpayers to use the difference between the amount paid for shares purchased pursuant to the exercise of an ISO during 2000 and the fair market value of such shares on April 15, 2001, for purposes of computing their AMT.  H.R. 2794, 107th Cong., 1st Sess. (2001), was never enacted.

On November 13, 2003, respondent mailed petitioner a notice of deficiency, in which respondent determined a deficiency of $4,833 in petitioner's 1999 Federal income tax and a deficiency of $169,510 in petitioner's 2000 Federal income tax.  In the notice of deficiency respondent stated:

> The fair market value of Exodus Communications, Inc. common stock, at the date that certain stock options were exercised (December 21, 2000) was $23.25 per share instead of the amount used to compute the adjustments/preferences on [F]orm 6251 of the income tax return. Therefore, the amount of the adjustment/preference is $1,057,415.00 instead of the $452,025.00 reported on the return. * * *

On December 4, 2003, prior to filing a petition for redetermination of the notice of deficiency, petitioner filed a Form 1040X, Amended U.S. Individual Income Tax Return for 2000, reducing his alternative taxable income for AMT purposes by $452,025, the excess of the price for Exodus common stock reported on NASDAQ on April 15, 2001, over the price he paid for the stock, thereby eliminating the $116,973 of AMT reported on his 2000 Federal income tax return and claiming a tax refund of $149,757. Under Part II, Explanation of Changes to Income, Deductions, and Credits, of the 2000 amended Federal income tax return, petitioner stated: "Return adjusted to reflect shares subject to substantial risk of forfeiture and non-transferable."

Petitioner filed a petition for redetermination of the notice of deficiency for the year 2000 with the Court on December 18, 2003.

On December 27, 2004, respondent filed a motion for partial summary judgment on the issue of whether petitioner's rights to shares of stock of Exodus he acquired during 2000 as a result of exercising an ISO were subject to a substantial risk of forfeiture.

On December 28, 2004, petitioner filed with the Court a cross-motion for partial summary judgment in petitioner's favor that: (1) Petitioner's rights to shares of stock acquired during 2000 as a result of exercising an ISO were subject to a substantial risk of forfeiture; and (2) petitioner is entitled to an ATNOL deduction under section 56(d).

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant partial summary judgment when there are no genuine issues of material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988). We conclude that there is no genuine issue of material fact as to whether petitioner's right to shares of Exodus stock was subject to a substantial risk of forfeiture and that a decision may be rendered as a matter of law. We also conclude there is a material issue of fact as to whether petitioner is entitled to an ATNOL deduction under section 56(d).

Petitioner admits that petitioner's stock option meets the requirements of section 422 and qualifies as an ISO. Under section 421(a), a taxpayer is allowed to defer regular tax on

income resulting from a stock option meeting the requirements of section 422 or 423 until the taxpayer sells the shares of stock. Were our inquiry to end here petitioner would not have been required to recognize any gain until he disposed of the shares of stock he acquired by exercising his ISO. Our inquiry cannot end here because of the application of the AMT.

Under section 56(b)(3), "Section 421 shall not apply to the transfer of stock acquired pursuant to the exercise of an incentive stock option (as defined in section 422)." Therefore, for AMT purposes, shares of stock acquired by exercising a stock option that qualifies as an ISO under section 422 are treated as shares of stock acquired by means of exercising a nonqualified stock option under section 83. See sec. 56(b)(3); sec. 1.83-7(a), Income Tax Regs.; see also Speltz v. Commissioner, 124 T.C. ___ (2005) (slip op. at 22-23).

Under section 83, a taxpayer generally must recognize income when he exercises a compensatory stock option to the extent that the fair market value of the shares of stock transferred to him exceeds the price he pays at the time he exercises the option if the taxpayer's rights in the shares are transferable or not subject to a substantial risk of forfeiture.[2] Sec. 83(a); Tanner

---

[2] Section 83(a) provides:

> SEC. 83(a) General Rule.--If, in connection with the performance of services, property is transferred to
> (continued...)

v. Commissioner, 117 T.C. 237, 242 (2001), affd. 65 Fed. Appx. 508 (5th Cir. 2003); sec. 1.83-7(a), Income Tax Regs.

Caselaw establishes that a restriction on the transferability of property does not affect the timing of income inclusion or the amount of income required to be included under section 83 if the property is not subject to a substantial risk of forfeiture. See Pledger v. Commissioner, 71 T.C. 618 (1979), affd. 641 F.2d 287 (5th Cir. 1981); Sakol v. Commissioner, 67 T.C. 986 (1977), affd. 574 F.2d 694 (2d Cir. 1978); Koss v. Commissioner, T.C. Memo. 1989-330, affd. 908 F.2d 962 (3d Cir. 1990).

Under section 83(c)(3), if a taxpayer selling his shares of stock could be subject to a suit under section 16(b) of the

_____

[2](...continued)
any person other than the person for whom such services are performed, the excess of--

(1) the fair market value of such property (determined without regard to any restriction other than a restriction which by its terms will never lapse) at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over

(2) the amount (if any) paid for such property,

shall be included in the gross income of the person who performed such services in the first taxable year in which the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever is applicable. * * *

Securities Exchange Act of 1934, ch. 404, 48 Stat. 896, "such person's rights in such property are (A) subject to a substantial risk of forfeiture".  Section 83(c)(3) does not apply beyond the initial 6-month period provided in section 16(b) of the Securities Exchange Act of 1934.  Tanner v. Commissioner, supra at 245-256.

Petitioner does not claim that he would have been subject to liability under section 16(b) of the Securities Exchange Act of 1934.

A taxpayer's right to his shares of stock may be subject to a substantial risk of forfeiture if his rights to full enjoyment of the shares of stock is conditioned upon the future performance of substantial services.  Sec. 83(c)(1).  The record is devoid of any facts that show petitioner's right to full enjoyment of his shares of Exodus stock was conditioned upon the future performance of substantial services.

Petitioner alleges his shares of Exodus stock were subject to a substantial risk of forfeiture and not freely transferable because they were blacked out from trading by reason of Exodus's insider trading policy.  In his brief, petitioner relies on Robinson v. Commissioner, 805 F.2d 38 (1st Cir. 1986), revg. 82 T.C. 444 (1984).

The Court of Appeals for the First Circuit in Robinson v. Commissioner, supra at 40-41, held that a taxpayer's shares of

stock were subject to a substantial risk of forfeiture until a 1-year sellback provision lapsed. The employer in Robinson could have compelled its employee to sell the shares of stock back to it at the price the employee paid at the time he exercised his stock option if the employee attempted to sell the shares of stock within a year of exercising his stock option.

Robinson is distinguishable from the instant case on its facts. Petitioner has not shown that Exodus could have ever compelled him to return his shares of stock. The remedy chosen expressly by Exodus to enforce its insider trading policy was not a forfeiture of the shares, but disciplinary proceedings against the offending employee, up to and including involuntary termination of employment.

The Court of Appeals for the Ninth Circuit, citing section 1.83-3(c)(1), Income Tax Regs., has noted that "The risk of forfeiture analysis requires a court to determine the chances the employee will lose his rights in property transferred by his employer." Theophilos v. Commissioner, 85 F.3d 440, 447 n.18 (9th Cir. 1996), revg. on another issue T.C. Memo. 1994-45.

The evidence in the instant case shows that petitioner had no substantial risk of losing the rights to his shares of Exodus stock. There is no evidence that Exodus could have ever compelled petitioner to return his shares after he exercised his ISO; no sellback provision is present; nor is there any evidence

that Exodus could have compelled petitioner to forfeit his shares of stock.

In consequence of the foregoing, we hold that petitioner's rights to his shares of Exodus stock were not subject to a substantial risk of forfeiture.  We therefore shall grant respondent's motion for partial summary judgment.

Petitioner also alleges that he is entitled to an ATNOL deduction under section 56(d).  An ATNOL deduction is the net operating loss deduction allowable for the taxable year under section 172 and is computed by taking into consideration all the adjustments to taxable income under sections 56 and 58 and all the preference items under section 57 (but only to the extent that the items increased the net operating loss for the year for regular tax purposes).  Sec. 56(d)(1).  Section 172 defines the net operating loss as "the excess of the deductions allowed by this chapter over the gross income."  Sec. 172(c).  In the case of a noncorporate taxpayer, the amount deductible on account of losses from sales or exchanges of capital assets shall not exceed the amount includable on account of gains from sales or exchanges of capital assets.  Sec. 172(d)(2)(A).  In addition, where deductions are not attributable to the taxpayer's trade or business, the deductions generally will be allowed only to the extent of the amount of the gross income not derived from the taxpayer's trade or business.  Sec. 172(d)(4).

Determination of whether petitioner is entitled to such deduction is based upon facts and circumstances which are not before the Court.  Granting of the motion for summary judgment with respect to this issue would be premature, because material issues of fact exist, not the least of which is whether petitioner was engaged in his activity as an investor or trader. We therefore shall deny petitioner's motion for summary judgment as to whether he is entitled to an ATNOL deduction under section 56(d).

In reaching our holdings herein, we have considered all arguments made, and to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order</u>

<u>will be issued</u>.