T.C. Memo. 2007-102

UNITED STATES TAX COURT

JEFFREY CHOU AND CINDY CHOU, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19015-05L.          Filed April 25, 2007.

Robert L. Sommers, for petitioners.

Alvah Lavar Taylor, for petitioner Cindy Chou.

Jonathan A. Neumann and Shannon Edelstone, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  This action was commenced in response to
Notices of Determination Concerning Collection Action(s) Under
Section 6320 and/or 6330.  The issues for decision are
(1) whether the Court should determine petitioners' tax liability
for 2001 after that liability has been conceded by respondent and

respondent has abated an assessment based on petitioners' amended return for 2001 and (2) whether petitioner Cindy Chou (Mrs. Chou) qualifies for relief under section 6015(f).  Unless otherwise indicated, all section references are to the Internal Revenue Code.

These issues arise in the context of a frequently occurring factual situation involving the alternative minimum tax (AMT) on incentive stock options (ISOs) exercised in 2000, followed by a drop in the value of the shares, a claim by the taxpayer that the taxable event occurred in a later year when the value of the shares was lower, and attempts to avoid or compromise the outstanding AMT liability.

                          FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in California at the time that their petition was filed.

Petitioners have been married at all times since 1996.  They have two children, the older of whom was born on August 1, 2000. Mrs. Chou graduated from the University of Texas with a degree in radio, television, and film and studied interior decorating after college.  Mrs. Chou has a small interior design business, but she is mainly a stay-at-home mother for petitioners' two children.

- 3 -

Petitioner Jeffrey Chou (Mr. Chou) has never abused Mrs. Chou at any time.

In 1996, Mr. Chou began employment as a hardware engineer for Granite Systems (Granite). As part of his employment package, Mr. Chou received 80,000 ISOs with an exercise price of $0.05 per share. The ISOs vested over a 4-year period. Several weeks after Mr. Chou began his employment, Granite merged with Cisco Systems (Cisco). Cisco converted Mr. Chou's Granite ISOs into Cisco ISOs, and, through stock splits, Mr. Chou's ISOs grew to approximately 153,000 over the next several years. Mr. Chou received the Cisco ISOs in connection with his status as a Cisco employee.

In 2000, Mr. Chou exercised 106,560 of his Cisco ISOs when the fair market value of the Cisco stock had an average price of $64.69 per share. Mr. Chou did not sell any of the Cisco shares acquired by him through the exercise of the ISOs during 2000. By the end of 2000, the price per share of Cisco stock was approximately $40.

In March 2001, petitioners had their tax return prepared and were told that they owed $1,962,365 in tentative AMT because of the exercise of Mr. Chou's stock options. By April 2001, the price per share of Cisco stock was $17.64.

Petitioners filed a joint Form 1040, U.S. Individual Income Tax Return, for 2000 in April 2001. On the line for "amount you

owe", the sum of $1,928,732 was reported.  Mrs. Chou's signature on the return appeared approximately 1-1/2 inches below the line for "amount you owe".  Her occupation was shown as interior designer.

On November 19, 2001, petitioners filed an offer-in-compromise (OIC) on "Doubt as to Liability" for 2000, citing pending Federal legislation.  On December 6, 2001, while their OIC was pending, the Internal Revenue Service sent them a notice of intent to levy for 2000.  They ultimately withdrew their OIC for 2000 based on "Doubt as to Liability", and, on February 4, 2002, submitted an OIC based on "Effective Tax Administration" or, in the alternative, "Doubt as to Liability with Special Circumstances".  Their OIC was rejected on August 26, 2002, and petitioners sought review by the Appeals Office.  On March 20, 2003, the Appeals Office sustained rejection of the OIC for 2000. Petitioners sought judicial review of that rejection more than 30 days after the offer was rejected.

Petitioners' Federal income tax return for 2001 was timely filed in April 2002.  On or about July 20, 2003, petitioners filed joint amended returns for 2000 and 2001, claiming that the transaction involving the Cisco shares originally reported on their 2000 tax return should have been reported in 2001. Petitioners explained their position as follows:

> Taxpayers amend their 2001 personal income tax
> return to report their * * * [AMT] preference in tax

year 2001 instead of tax year 2000.  Taxpayers received
stock pursuant to IRC Sec. 422 through the exercise of
an * * * [ISO] in tax year 2000, and initially treated
the stock as an AMT preference item in tax year 2000.
However, the stock contained a substantial restriction
of forfeiture under IRC Sec. 83(c)(1); therefore, the
stock vested for AMT preference purposes when the
restriction lapsed in tax year 2001.  Taxpayers have
filed an amended return for 2000 reflecting this
change.

* * * * * * *

In taxpayers' case, they exercised an ISO under
IRC Sec. 422.  To qualify for the capital gain benefits
provided by the statute, taxpayers were required to
hold the stock for at least 12 months.  This 12-month
restriction constitutes a substantial risk of
forfeiture since rights in property were conditioned
upon the occurrence of a specified event (the 12-month
holding period) related to the transfer, and the
failure to hold the stock for 12 months causes a
substantial forfeiture (the loss of capital gain
benefits under IRC Sec. 422).

When stock is subject to a substantial risk of
forfeiture as defined in IRC Sec. 83, the date for the
calculation of the AMT preference and for inclusion
thereof in AMT is the date the restrictions lapse.  The
12-month restriction lapsed in 2001 and the value of
the stock on the date the restriction lapsed will be
used for AMT purposes.

The liability shown on petitioners' 2000 return filed in

April 2001 was assessed based on petitioners' reporting.  The IRS

accepted petitioners' amended return for 2001 and made a second

assessment against petitioners in the amount of $578,052 on

September 29, 2003.  The IRS did not accept petitioners' amended

return for 2000.  On November 10, 2003, the IRS sent petitioners

a Notice of Intent to Levy for 2001.  On the same date, the IRS

sent petitioners a collection letter showing the unpaid balance

of petitioners' liability for 2000 to be $2,703,152.90. On November 13, 2003, the IRS sent petitioners a Notice of Federal Tax Lien for 2001.

On December 4, 2003, petitioners filed a Request for a Collection Due Process Hearing for 2000 and 2001 in response to the Notice of Intent to Levy. On December 16, 2003, petitioners filed a Request for a Collection Due Process Hearing for 2000 and 2001 in response to the Notice of Federal Tax Lien.

On April 8, 2004, petitioners filed a refund action for 2001 in the U.S. District Court for the Northern District of California. On July 6, 2004, the District Court action was dismissed for lack of subject matter jurisdiction. The dismissal was appealed to the U.S. Court of Appeals for the Ninth Circuit, but the appeal was dismissed on November 23, 2005.

On April 9, 2004, the IRS notified petitioners that their amended return for 2000 was being audited. On May 13, 2004, respondent's Appeals Office sent a Decision Letter Concerning Equivalent Hearing to petitioners regarding their tax liability for 2000. An equivalency hearing had been conducted because no request for a hearing was filed within the 30-day period prescribed by section 6320 and/or 6330 with respect to petitioners' liability for 2000. In the decision letter, a Notice of Intent to Levy dated December 6, 2001, was not sustained because petitioners' OIC was pending at the time that

the levy notice was issued.  No Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 for 2000 has ever been issued.

In an OIC submitted with respect to the requested section 6330 hearing and signed by each petitioner on July 27, 2004, it was represented:  "In March, 2001, Jeff and Cindy had their tax returns prepared and were told that they owed $1,962,365 in tentative AMT because of the exercise of his stock options."

On January 31, 2005, Mrs. Chou filed a Form 8857, Request for Innocent Spouse Relief, for 2000 and 2001.  The letter submitting Mrs. Chou's claims stated that the claim was being submitted as part of petitioners' section 6330 hearing for 2001. The request asserted:  "If Jeff and Cindy's OIC is not granted, then Cindy's claim for innocent spouse relief should be granted as to her since she did not cause the AMT liability and received no economic benefit from Jeff's exercise of his Cisco ISOs."  No representation was made in the Form 8857 concerning Mrs. Chou's knowledge of the tax due for 2000 at the time the return was filed.

Appeals Officer Lawrence Dorr (Dorr) was assigned petitioners' OIC, the proposed levy and lien actions with respect to collection of petitioners' reported liability for 2001, and Mrs. Chou's section 6015(f) relief claim.  On July 27, 2005, responding to an inquiry from Dorr about her thoughts regarding

the payment of tax when she signed the 2000 tax return, petitioners submitted a handwritten statement from her as follows:

> At the time I signed the 2000 tax return, it was my understanding that my husband would take care of paying the taxes since the increase in our taxes was the result of employee stock options occurring in his separate stock account. I did not receive any brokerage statements for this account and did not know the amount of funds in this account. Ever since we've been married, my husband has always taken care of all our tax filings and at the time I signed the 2000 tax return, I had no reason to believe otherwise.

The transmittal letter by Mrs. Chou's counsel noted that the knowledge factor "is just one of several factors to be considered and is not a conclusive factor."

The section 6015(f) claim, in accordance with IRS procedure, was sent to a centralized unit in Cincinnati, Ohio. The file relating to the section 6015(f) claim was then transmitted from Cincinnati to Oakland, California, but was lost in transit. In order to consider Mrs. Chou's claim, Dorr recreated the file relating to that claim. In recreating the file, Dorr failed to maintain a complete case activity record and did not prepare any document supporting his determination with respect to Mrs. Chou's section 6015(f) claim. The file that has been stipulated as the "administrative record" in this case omitted at least four other items that should have been included in the administrative record. Those items are: (1) A true and complete copy of the Notice of Intent to Levy dated November 10, 2003, and the Letter

3174(P) dated November 10, 2003; (2) a true and complete copy of a Request for a Collection Due Process Hearing for 2000 and 2001 that petitioners filed on December 4, 2003, in response to the Notice of Intent to Levy issued by the IRS on November 10, 2003; (3) a letter sent by petitioners' counsel Robert L. Sommers (Sommers) to Appeals Officer Dorr on May 4, 2005; and (4) a letter sent by Sommers to Appeals Officer Dorr on July 27, 2005.

On September 13, 2005, the Appeals Office sent to petitioners Notices of Determination Concerning Collection Action(s) under Section 6320 and/or 6330 with respect to 2001. Those notices contained an explanation, in relevant part, as follows:

> Your representative has advanced several arguments for applying the * * * [AMT] on the exercise of the stock options at issue in 2001 rather than 2000.
>
> The first argument is that the exercise of the options was restricted in such a way as to subject you to a "substantial risk of forfeiture".
>
> The "restriction" cited by your representative is the provision of IRC Section 422 that provides for capital gain treatment on the sale of stock held for at least twelve months. Your representative refers to this as "the required 12-month holding period" and argues that your rights in the stock were conditioned on the 12-month holding period. Your representative cites <u>Prentice I. Robinson</u>, CA-1, 86-2 USTC 9790. In that case the Court held that the petitioner did not own transferable rights to stock acquired from his employer for the first year after receipt of the stock. However, that decision was based on a specific sell-back agreement requiring that the petitioner sell his shares back to the corporation at the original cost if he wished to dispose of them in less than one year. That agreement created a "substantial risk of

forfeiture" and rendered the stock non-transferable for one year on its own terms, not because of Section 422. No such agreement exists in the present case. When you acquired the stock in early 2000 it was acquired without restriction.

The provisions of IRC Section 422 impose no restriction on the sale of stock. They do provide favorable tax treatment if the stock is held for one year. While this might have disadvantaged you for tax purposes had you sold the stock before holding it for a year, it in no way restricted your ability to sell or otherwise dispose of the stock at any point.

Your representative also argues that the Service has a "duty of consistency" which requires that it treat the options as subject to * * * [AMT] in 2001, not 2000. In support of that he cites Estate of Hilda Ashman, CA-9, * * * [2000-2] USTC 50,806. In short, that case states that a taxpayer cannot take a position which is to his advantage in one year and then take an opposite position after that year is barred by the statute of limitations. The statutes for both 2000 and 2001 are still open by virtue of your claim for refund. In Orange Securities Corp., CA-5, 42-2 USTC 9735, the Court held that there is a "duty of consistency on both the taxpayer and the Commissioner".

You originally filed your 2000 return and reported the * * * [AMT] for that year. The Service accepted that return. When you filed amended returns for both 2000 and 2001 to shift the * * * [AMT] to the later year the Service accepted the amended return for 2001 but not the one for 2000. Thus you found yourselves assessed very substantial * * * [AMT] for both years for the same underlying exercise of stock options. Your representative argues that since the Service accepted the amended return for 2001 and assessed the * * * [AMT] shown thereon, it must--to be consistent--accept the amended return for 2000 and abate the AMT for that year.

The Service has not taken inconsistent positions. It has consistently argued that the liability attaches to 2000. Further, the Service has taken the position that the resolution of the inconsistency can be achieved by simply abating the AMT for 2001. This is the position taken by the Revenue Agent in the examination of the

amended returns.  Your claim for refund is under consideration in Appeals and will be submitted sustaining the application of the AMT in 2000 and proposing abatement of the AMT for 2001.

Incentive stock options were issued to you by Cisco Systems as part of your compensation for services.  You exercised the options in 2000 and 106,560 shares of Cisco stock were transferred to you unconditionally and without restriction.  The * * * [AMT] liability produced by these transactions attaches to the year 2000.

The lien notice stated:

<u>Addressing Efficient Collection with Concern Over the Intrusiveness of Collection</u>

Internal Revenue Manual 5.12.1.13 provides for the filing of a Notice of Federal Tax Lien for balances due of over $5,000.00.

The lien is intrusive but it is appropriate in this instance to protect the government's interest.  You have made no payments toward either 2000 or 2001 and there is no indication that the liability for 2000 will be paid voluntarily.  In terms of alternatives to collection, you have filed an * * * [OIC] based on doubt as to liability, doubt as to collectibility, and effective tax administration.  That offer is being rejected on all three grounds.  It is the Service's position that ultimately there will be no AMT liability for 2001.  However, until the issue is finally decided in the various venues to which you have turned for relief the lien continues to be appropriate.

The levy notice stated:

<u>Addressing Efficient Collection with Concern Over the Intrusiveness of Collection</u>

IRC Section 6330(c)(3)(C) requires that the determination by an Appeals Officer under this subsection shall take into consideration whether any proposed collection action balances the needs for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary.

The levy is intrusive but it is appropriate in this instance to protect the government's interest. You have made no payments toward either 2000 or 2001 and there is no indication that the liability for 2000 will be paid voluntarily. In terms of alternatives to collection, you have filed an * * * [OIC] based on doubt as to liability, doubt as to collectibility, and effective tax administration. That offer is being rejected on all three grounds. It is the Service's position that ultimately there will be no AMT liability for 2001. However, until the issue is finally decided in the various venues to which you have turned for relief the levy notice continues to be appropriate.

On September 29, 2005, the IRS Appeals Office sent Mrs. Chou a Notice of Determination Concerning Your Request for Relief under the Equitable Relief Provision of Section 6015(f) that denied Mrs. Chou's request for innocent spouse relief for 2000 and 2001. The notice simply stated, in relevant part:

We've determined that, for the above tax year(s), we:

- cannot allow your request.

No further explanation was given. No further explanation was placed in the administrative file.

By notice served March 24, 2006, this case was set for trial in San Francisco, California, on August 28, 2006. On July 24, 2006, respondent filed a motion for continuance of trial, representing, in part:

5. Respondent concedes that the determination set forth in the Notice of Determination Concerning Collection Action(s) under Section 6320 and/or 6330 issued to petitioners on September 13, 2005, for petitioners' income tax liability for the taxable year 2001 will not be sustained.

6. On July 19, 2006, respondent's Appeals Officer requested a full abatement of the entire tax liability assessed against petitioners for the taxable year 2001.

7. Petitioner Cindy Chou's claim for relief from joint and several liability under I.R.C. sec. 6015(f) for the taxable year 2001 is moot, as respondent has requested an abatement of all tax owed by petitioners for the taxable year 2001.

8. The only issue remaining in this case concerns whether Petitioner Cindy Chou is entitled to relief from joint and several liability under I.R.C. sec. 6015(f) for the taxable year 2000.

9. Because a Notice of Determination was not issued for a Collection Due Process appeal with respect to the taxable year 2000, I.R.C. secs. 6320 and 6330 do not provide the Court with jurisdiction to hear an appeal of Petitioner Cindy Chou's claim for relief under I.R.C. sec. 6015(f) for the taxable year 2000. Thus, the only basis for the Tax Court to review respondent's section 6015(f) determination in this case is section 6015(e).

Respondent's motion for continuance was based on then-outstanding caselaw to the effect that the Court would not have jurisdiction to hear Mrs. Chou's section 6015(f) claim because no deficiency had been determined. (Respondent now concedes jurisdiction over that issue based on subsequently enacted legislation, as discussed below.)

Petitioners objected to respondent's motion for continuance. Petitioners also objected to respondent's abatement of the assessment for 2001, accusing respondent of attempting to deprive the Court of jurisdiction over that year. Respondent's motion for continuance was denied.

OPINION

This is an unusual case, in which petitioners insist that we should reject respondent's concession that they owe no tax liability for 2001, that the assessment based on petitioners' amended return for that year will be abated, and that no collection action will be taken with respect to that assessment. Petitioners ask the Court to determine that they owe tax of $578,052 for 2001. Petitioners' obvious purpose is to have the Court determine that they do not owe the tax that they originally reported for 2000, a question that is not properly before the Court in this case.

The parties were able to cooperate with respect to a fairly complete stipulation, but not otherwise. Petitioners' rhetoric includes irresponsible accusations against respondent, and respondent unnecessarily attacks the credibility of petitioners' testimony, even after the Court commented at trial that their testimony was credible. We do not condone or address at length such overzealous advocacy and meritless arguments. Lack of objectivity serves no purpose other than unreasonably to protract these proceedings. For the reasons set forth below, we conclude that there is only one issue properly before the Court, and that is Mrs. Chou's entitlement to relief under section 6015(f) for 2000.

Section 6330 and Liability for 2001

Our jurisdiction in this case is predicated upon section 6330(d)(1)(A), which gives the Tax Court jurisdiction "with respect to such matter" as set forth in the determination of the Appeals Office. Greene-Thapedi v. Commissioner, 126 T.C. 1, 6 (2006); Freije v. Commissioner, 125 T.C. 14, 25 (2005).

Petitioners originally reported almost $2 million in AMT liability for 2000 as a result of Mr. Chou's exercise of his Cisco options. Stunned by the consequence and unable to secure relief through an OIC, petitioners then filed amended returns claiming that the liability should have been reported in 2001, when it would be substantially lower because of the reduced value of the stock. Petitioners now contend that, by assessing the tax based on their amended 2001 return, the IRS "accepted" their position and is required, by the "duty of consistency", to abate the liability for 2000.

In their amended returns, in their OIC, and in their briefs, petitioners assert that the capital gains holding period under section 422 renders the stock that they acquired through exercise of Cisco ISOs nontransferable for 12 months without "forfeiture" of the favorable tax rates on capital gains. Their argument cites section 83(a), which deals with the time for recognizing income from property transferred in connection with the performance of services. This "risk of forfeiture" argument is

untenable, because that term applies to a condition that renders a taxpayer's beneficial ownership of stock subject to termination.  See Kadillak v. Commissioner, 127 T.C. 184 (2006); Montgomery v. Commissioner, 127 T.C. 43 (2006); Spitz v. Commissioner, T.C. Memo. 2006-168; Racine v. Commissioner, T.C. Memo. 2006-162; Facq v. Commissioner, T.C. Memo. 2006-111; Merlo v. Commissioner, T.C. Memo. 2005-178; see also United States v. Tuff, 469 F.3d 1249 (9th Cir. 2006); Guzak v. United States, 75 Fed. Cl. 304, 311 (2007).  Mr. Chou testified:  "I exercised because I could, the stock was vested and I just happened to not sell."  There is neither logic nor authority supporting the argument that consideration of tax consequences is a risk of forfeiture within the meaning of section 83(a).  There is no evidence of any nontax reason for Mr. Chou not to sell the stock that he acquired in 2000.

Petitioners raise a series of arguments that they are entitled to a windfall as a result of the assessment, now abated, for 2001.  (They accuse respondent of "gamesmanship", apparently believing that the best defense is a strong offense.)  We cannot conclude that the abatement and concession should be rejected.  Respondent's position, as set forth in detail in the September 13, 2005, notices of determination quoted at length above, was not unreasonable.  Assuming that the 2001 tax liability should have been abated earlier, however, and

paraphrasing Justice Frankfurter, we believe that wisdom comes too seldom, and it should not be rejected merely because it comes late. ("Wisdom too often never comes, and so one ought not to reject it merely because it comes late." Henslee v. Union Planters Natl. Bank & Trust Co., 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting).)

Respondent contends that the concession and abatement with respect to 2001 render petitioners' claims with respect to that year moot. We agree. Our jurisdiction under section 6330 is generally limited to reviewing whether a proposed lien or levy action is proper. Once respondent concedes that there is no unpaid liability for the year in dispute upon which a lien or levy could be based, the case is moot. Greene-Thapedi v. Commissioner, supra at 7; Gerakios v. Commissioner, T.C. Memo. 2004-203; Chocallo v. Commissioner, T.C. Memo. 2004-152. We need say no more about the issue for 2001.

Section 6015(f)

Generally, spouses filing joint Federal income tax returns are jointly and severally liable for the taxes due on those returns. Sec. 6013(d)(3). Section 6015 provides relief from liability in certain circumstances. Because the relief sought in this case is from a liability shown on petitioners' original 2000 return and assessed based on that return, only section 6015(f) is

applicable.  See <u>Washington v. Commissioner</u>, 120 T.C. 137, 147 (2003).

At the time of the motion to continue, respondent's position was that <u>Commissioner v. Ewing</u>, 439 F.3d 1009 (9th Cir. 2006), revg. 118 T.C. 494 (2002) and vacating 122 T.C. 32 (2004), was controlling in this case.  In that case, the Court of Appeals held that the Tax Court did not have jurisdiction to hear cases involving relief under section 6015(f) where there was no determination of a deficiency.  Respondent now concedes, however, that the Tax Relief and Health Care Act of 2006, Pub. L. 109-432, 120 Stat. 2922, which amended section 6015(e), confers the necessary jurisdiction with respect to Mrs. Chou's claim for relief for the year 2000.  Respondent contends, and we agree, that her claim for 2001 is moot for the reasons discussed above.

The testimony of petitioners at trial with respect to the allocation of household responsibilities between them was brief and was credible.  It was credible because petitioners did not make the improbable claims that now appear in the briefs authored by their counsel, as discussed below.

Respondent asserts that we should disregard the testimony of petitioners because we should consider only the "administrative record" in deciding whether it was an abuse of discretion to deny the relief sought by Mrs. Chou.  Respondent acknowledges that this Court has held that the determination to deny relief under

section 6015(f) is subject to de novo review by the Court, but relies on our opinion as having been vacated on jurisdictional grounds. See Ewing v. Commissioner, 122 T.C. 32, 38-39 (2004), revd. in part and vacated in part on jurisdictional issue Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. 2006). Though we may have occasion in the future to reconsider the Court's approach to these cases, as explained in Ewing v. Commissioner, 122 T.C. 32 (2004), and applied in numerous other cases, we do not do so here. Respondent found it necessary to call Dorr to explain his reasons for rejecting Mrs. Chou's claim, because his reasons were not anywhere in the administrative record. Respondent stipulated that at least four other documents that should have been included in the administrative record were not. The administrative record had to be "recreated" by Dorr because the parts relating to Mrs. Chou's claim were lost in transmittal between IRS offices. The testimony at trial will be considered in determining whether Mrs. Chou is entitled to relief.

As directed by section 6015(f), the Commissioner has prescribed guidelines under which a taxpayer may qualify for equitable relief from liability on a joint return. See Rev. Proc. 2003-61, 2003-2 C.B. 296. Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, provides in relevant part that relief ordinarily will be granted if three criteria are met. The first criterion, that the requesting spouse is no longer married to or

is legally separated from the nonrequesting spouse, or is not a member of the same household at anytime during the 12 months prior to the request for relief, is not satisfied in this case. The other two criteria are in dispute. They are (1) whether, on the date the requesting spouse signed the joint return, she had no knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability and (2) that the requesting spouse would suffer economic hardship if relief is not granted.

Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-299, provides a nonexclusive list of factors that may be considered in determining whether, taking into account all of the facts and circumstances, it would be inequitable to hold a taxpayer such as Mrs. Chou liable for any part or all of the unpaid liability. No single factor is determinative. Respondent concedes that Mrs. Chou has made a good faith effort to comply with the income tax laws in the years following the years in issue, which is one of the factors favoring relief. Respondent argues, however, that factors weighing against relief in this case include lack of economic hardship, knowledge or reason to know that the taxes would not be paid, and significant benefit (beyond normal support) from the unpaid tax liability. Respondent asserts that the remaining factors (that Mrs. Chou was still married to Mr. Chou, the absence of abuse, and the absence of any mental or

physical health condition) are neutral.  Petitioners focus on the hardship, benefit, knowledge, and health factors.

Petitioners assert that, before analyzing the above factors, we must determine whether petitioners actually owe the taxes reported on their original return for 2000.  We assume that they do, because, absent compromise, there is no tenable argument that they do not.  We do not comment on the prospects for compromise. Both parties, however, rely solely on material submitted in relation to the OIC in their discussion of financial matters. Petitioners provided no testimony or direct evidence at trial as to their basic living expenses or Mr. Chou's continuing ability to pay them.  Petitioners' hardship argument is essentially that, if all of the assets owned by petitioners were liquidated and paid towards the unpaid assessment for 2000, petitioners would still owe more than $1 million.  While this may be an appropriate analysis with respect to the OIC, it does not establish hardship in the current record.  See sec. 301.6343-1(b)(4), Proced. & Admin. Regs. (defining hardship as the inability to pay reasonable basic living expenses).  So far as the record reflects, Mr. Chou continues to earn a substantial income and to provide more than basic support to the family.

With respect to the significant benefit factor, petitioners essentially argue that neither petitioner received a benefit from the unpaid taxes, because the taxes accrued on value that they

never received from exercise of the stock options.  The parties dispute the significance of Mr. Chou's pledge of the Cisco stock to support a loan and use of the proceeds of the loan for purposes other than payment of taxes.  On the record in this case, we conclude that the benefit factor neither favors nor precludes relief.

With regard to health factors, the briefs authored by petitioners' counsel repeatedly assert that Mrs. Chou had recently given birth and was caring for a newborn infant.  Within the briefs, filed in January and March 2007, the infant is at various places described as born in "late 2000", newborn, 6 months old, 8 months old, and 9 months old.  While thus so careless with the facts on which they rely, the briefs accuse respondent of "inaccuracies" and "shoddy analysis".  These arguments are unsupported, unpersuasive, and inexcusable.

The briefs frequently assert "the physical and mental demands on the mother of a newborn infant" as a health issue and as excusing lack of knowledge of the unpaid liability, but nothing in the record supports that characterization.  Mrs. Chou testified that her child was born on August 1, 2000, and the return was signed in April 2001.  The extent of her testimony with respect to the "demands" of motherhood was as follows:

> Q  [Mrs. Chou's counsel]  Lot of work taking care of an infant?

> A  [Mrs. Chou]  Yes, definitely.

We conclude that there are no special mental or physical health factors in this case.

Petitioners' briefs similarly overstate the record with respect to Mrs. Chou's lack of knowledge that the taxes would be paid at the time she signed the return. Petitioners each testified that Mr. Chou handled the family's finances, consulted with the accountant, and paid for the household expenses. They also testified that they did not have any joint checking accounts or credit cards. Mrs. Chou's testimony about her state of mind at the time that she signed the return was as follows:

> Q [Mrs. Chou's counsel] Do you remember looking at the 2000 return when you signed it, do you remember actually signing the 2000 return?

> A [Mrs. Chou] I'm sure I signed it. I don't remember that specific one as different as the--any other particular year.

In relation to the OIC, petitioners had submitted a factual statement asserting that they learned of the AMT liability in March 2001. When she signed the joint income tax return in April, the amount shown as owing, $1,928,732, appeared approximately 1-1/2 inches above her signature. In her Form 8857, Mrs. Chou did not claim that she did not know of the liability. The July 27, 2005, statement that she submitted in response to Dorr's inquiry was similarly more cautious and candid in asserting the state of her knowledge, to the effect that she <u>was aware</u> of the increased taxes resulting from the stock options

but that she assumed that her husband would take care of paying

the taxes.  Mr. Chou testified as follows:

> A  [Mr. Chou]  I had some clue at the time of AMT but the gravity of the situation did not occur to me until my tax returns were finalized by my CPA.

> Q  [Mrs. Chou's counsel]  Okay, if I use the term "AMT-ISO" or "AMT-ISO situation", it just means a shorthand for the alternative minimum tax as caused by the exercise of incentive stock options, so you'll understand what I mean by that.

> After this occurred, after your AMT-ISO situation occurred, did you engage in any activities regarding this?

> A  Yes.  I engaged in numerous activities.  First I reported my tax and I went public with my story and I started an organization called Reform AMT-dot-org. We're a national grassroots organization.  We have over 2000 members across 48 states.

> And our mission is to appeal to Congress and try to fix the law.

> Q  Did you engage in any legislative efforts?

> A  Yes.  Reform AMT has been heavily involved with our Congress representatives and senators in trying to introduce bills, and, hopefully, pass bills.

Mr. Chou also testified that he met with the National Taxpayer

Advocate and thereafter filed the OIC.  Apparently, challenging

the liability was the strategy adopted when the return was filed

without even partial payment.

There is no suggestion by anyone that Mr. Chou ever deceived

Mrs. Chou or concealed anything from her.  Unfortunately, no

party on direct or cross-examination asked Mrs. Chou in detail

about her knowledge of the almost $2 million liability.  We

assume that, if she had been asked, she would have been truthful. In the absence of further explanation, it is improbable that Mrs. Chou did not know that, rather than paying the tax, petitioners would be challenging their liability.  She certainly did not satisfy her well-established duty of inquiry.  See, e.g., Albin v. Commissioner, T.C. Memo. 2004-230; Demirjian v. Commissioner, T.C. Memo. 2004-22 (and cases cited therein).  On the entire record, we conclude that Mrs. Chou knew or had reason to know that the tax would not be paid at the time that she signed the return.  We do not question petitioners' allocation of responsibility for family matters between themselves, but they have not shown that Mrs. Chou should be relieved of their joint liability on the 2000 return.

We have reviewed the other arguments of the parties.  They are without merit, irrelevant, or moot.

> An order of dismissal with respect to 2001 and a decision for respondent will be entered.