T.C. Summary Opinion 2008-19

UNITED STATES TAX COURT

EMILY VELEZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23682-05S.                Filed February 25, 2008.

Emily Velez, pro se.

<u>Jeremy L. McPherson</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references

are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case arises from a request for relief under section 6015(f) with respect to petitioner's joint income tax liabilities for 1996 and 1997.  No notices of deficiency were issued. Petitioner filed Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief), seeking equitable relief under section 6015(f) for each year.  Respondent determined that petitioner was not entitled to relief under section 6015(f) for either year.

The issue for decision is whether respondent abused his discretion when he denied petitioner's request for relief under section 6015(f) for 1996 and 1997.

### Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference.  At the time the petition was filed, petitioner resided in California.

During the years at issue, petitioner's former husband, David Velez (Dr. Velez), was a physician.  Petitioner, trained as a registered nurse, did not work outside of the home until 1997. Dr. Velez was sued by a patient in 1994 and as a result was dismissed from his employment.

On January 25, 1995, in an attempt to protect themselves from a judgment in the lawsuit, petitioner and Dr. Velez filed for bankruptcy under chapter 7 of the Bankruptcy Code, 11 U.S.C. sections 701-784 (2000). They received a discharge of dischargeable debts on May 25, 1995. Because of the ongoing lawsuit against him, Dr. Velez was forced to accept a series of lower paying positions and was eventually unemployed. He started a consulting business to provide income for his family.

During the years 1996 through 1999, Dr. Velez handled the family finances, hiring and submitting information to a certified public accountant for preparation of their annual income tax returns.

Petitioner and Dr. Velez timely filed a joint Federal income tax return for 1996 reporting tax due of $13,084. The return was filed without remittance. All of the income reported on the return was attributable to Dr. Velez. When petitioner signed the return for 1996, she was aware that the return was being filed without remittance. Dr. Velez told petitioner that the return was being filed without remittance because he did not have the money to pay the tax. Dr. Velez, however, told petitioner that he anticipated obtaining a job in the "medical field" in the "near future" and that he was attempting to work out a payment agreement with the Internal Revenue Service (IRS).

Several years before 1996, Dr. Velez was diagnosed as having contracted, and received treatment for, hepatitis C, but his illness remained dormant until 1997.

On March 19, 1997, petitioner and Dr. Velez filed a chapter 13 bankruptcy petition. The bankruptcy court granted a discharge on March 17, 1998, and as a consequence, Bank of America was allowed to foreclose on petitioner's personal residence. In April 1997, petitioner took a job at Waremart, Inc., to help support her family.

Dr. Velez's health started to decline rapidly in 1998, and he would be unable to work in 1999 and 2000. The University of California at Davis offered Dr. Velez a position as a forensic resident in 1998 at a salary close to what he had been making before the lawsuit. But he was advised by his doctor that he would not be capable of performing his duties without a liver transplant. Dr. Velez applied for a transplant, but petitioner's health insurer denied the request. Without the benefit of a transplant, Dr. Velez was forced to decline the employment offer from the University of California at Davis.

On August 27, 1999, petitioner and Dr. Velez filed their joint Federal income tax return for 1997. The return was filed without remittance of the $1,990 tax shown to be due. Of the $25,658 of total income reported on the 1997 tax return, $8,465 consisted of petitioner's wages and the balance was income of Dr.

Velez. The $96 of Federal withholding tax reported on the 1997 income tax return was tax withheld from petitioner's wages. Petitioner was aware when she signed the return for 1997 that it would be filed without remittance. Dr. Velez told petitioner that he did not have the money to pay the tax.

Dr. Velez never received a liver transplant, and his health continued to decline. He died on November 19, 2000. As a result of the two bankruptcies in 1995 and 1997 and his inability to earn income after 1997, Dr. Velez had no assets at the time of his death.

Petitioner filed a Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief), including a "Statement of Facts", and Form 12510, Questionnaire for Requesting Spouse.

The parties agree that: (a) Petitioner did not receive significant benefit, beyond normal support, from the unpaid income tax liabilities for 1996 and 1997; (b) Dr. Velez did not abuse petitioner; (c) petitioner is not in poor mental or physical health; (d) petitioner has made a good faith effort to comply and has complied with the income tax laws in the taxable years following 1997; (e) and petitioner would not suffer "economic hardship", as defined in section 301.6343-1(b)(4), Proced. & Admin. Regs., if she were required to pay the outstanding joint income tax liabilities for 1996 and 1997.

Petitioner reported wage income of $83,085 for 2005 and $89,354 for 2006.  A total tax liability of approximately $5,007.83 remains unpaid for 1996, and approximately $2,872.41 remains unpaid for 1997.

## Discussion

Except as otherwise provided in section 6015, petitioner bears the burden of proof with respect to her entitlement to relief under section 6015.  See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

### Joint and Several Liability and Section 6015 Relief

Section 6013(d)(3) provides that if a joint return is filed, the tax is computed on the taxpayers' aggregate income, and liability for the resulting tax is joint and several.  See also sec. 1.6013-4(b), Income Tax Regs.  But the IRS may relieve a taxpayer from joint and several liability under section 6015 in certain circumstances.

To obtain relief from joint and several liability, a spouse must qualify under section 6015(b) or, if eligible, allocate liability under section 6015(c).  In addition, if relief is not available under section 6015(b) or (c), a spouse may seek equitable relief under section 6015(f).  Fernandez v. Commissioner, 114 T.C. 324, 329-331 (2000); Butler v. Commissioner, 114 T.C. 276, 287-292 (2000).

Relief under section 6015(b) or (c) is premised on the existence of a deficiency or an understatement of tax. Sec. 6015(b)(1)(B) and (c)(1); Washington v. Commissioner, 120 T.C. 137, 145 (2003); Block v. Commissioner, 120 T.C. 62, 65-66 (2003). This case does not involve a deficiency or an understatement of tax, and relief under section 6015(b) and (c) is not available to petitioner.

Petitioner takes an "alternative position" in which she argues that she is entitled to allocate liability under section 6015(f) in a manner analogous to section 6015(c) relief for a deficiency or underpayment. She bases her argument on language in H. Conf. Rept. 105-599, at 250 (1998), 1998-3 C.B. 747, 1004, that indicates that a proposed Senate amendment to H.R. 2676, 105th Cong., 2d Sess., sec. 3201 (1998), would have allowed allocation in underpayment cases. As the report makes clear, however, that amendment was not accepted. H. Conf. Rept. 105-599, supra at 251, 1998-3 C.B. at 1005. The Court must follow the statute as written, not as it might have been written.

The IRS may relieve an individual from joint and several liability under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable for any unpaid tax or deficiency and she does not qualify for relief under section 6015(b) or (c).

Standard for Review

The Court reviews the IRS's denial of innocent spouse relief under section 6015(f) for abuse of discretion. See Butler v. Commissioner, supra at 292. Under the abuse of discretion standard, the Court must determine whether the IRS exercised its discretion arbitrarily, capriciously, or without sound basis in fact when it denied the requested relief. Id. The Court's review is limited, and the Court cannot substitute its judgment for that of the IRS and determine whether in the Court's opinion it would have granted relief. See Patton v. Commissioner, 116 T.C. 206 (2001); Collectors Training Inst., Inc. v. United States, 96 AFTR 2d 2005-6522, at 2005-6526, 2005-2 USTC par. 50,626, at 89,727 (N.D. Ill. 2005) (stating that an abuse of discretion "'means something more than' the court's belief that it would 'have acted differently if placed in the circumstances confronting the'" Appeals officer (quoting Johnson v. J.B. Hunt Transp., Inc., 280 F.3d 1125, 1131 (7th Cir. 2002))).

Guide for Exercise of Discretion

To guide IRS employees in exercising their discretion, the Commissioner has issued revenue procedures that list the factors they should consider; the Court also uses these factors when reviewing the IRS's denial of relief. See Washington v. Commissioner, supra at 147-152; Rev. Proc. 2003-61, 2003-2 C.B.

296, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447.

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, begins with a list of seven threshold conditions that a taxpayer must satisfy in order to qualify for relief under section 6015(f). Respondent concedes that petitioner satisfies each of the seven threshold conditions.

A requesting spouse who satisfies all of the applicable threshold conditions may be relieved of all or part of the liability under section 6015(f), if, taking into account all the facts and circumstances, the IRS determines that it would be inequitable to hold the requesting spouse liable for the income tax liability. Rev. Proc. 2003-61, sec. 4.01.

To qualify for relief under Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, the requesting spouse must: (1) No longer be married to, be legally separated from, or not have been a member of the same household as the nonelecting spouse at any time during the 12-month period ending on the date of the request for relief; (2) have had no knowledge or reason to know when he or she signed the return that the nonelecting spouse would not pay the tax liability; and (3) suffer economic hardship if relief is not granted. See Rev. Proc. 2003-61, sec. 4.02(1), 2003-2 C.B. at 298.

Petitioner's husband passed away on November 19, 2000, and petitioner's request for relief was received on May 22, 2003. Condition 1 is satisfied.

The Court has reviewed the evidence and concludes that petitioner has not shown that, at the time she signed the returns at issue, she had no knowledge or reason to know that her late husband would not pay the liabilities reported on the joint returns for 1996 and 1997.

When she signed the 1996 tax return, she knew that her husband was unemployed and that he had told her he did not have any money to pay the tax liability. Dr. Velez was also still embroiled in a lawsuit brought by a patient, the threat of which had caused him and petitioner to file for bankruptcy in January of 1995. Although Dr. Velez told petitioner that he "was attempting to work out a payment agreement" with the IRS, "a reasonable belief that taxes would be paid must at minimum incorporate a belief that funds would be on hand within a reasonably prompt period of time." See Banderas v. Commissioner, T.C. Memo. 2007-129. Petitioner does not meet all of the required conditions for relief under Rev. Proc. 2003-61, sec. 4.02(1).

Where the requesting spouse fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the IRS may nevertheless grant relief under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at

298. Rev. Proc. 2003-61, sec. 4.03, contains a nonexhaustive list of factors that the IRS will consider and weigh when determining whether to grant equitable relief under section 6015(f): (1) Marital status, (2) economic hardship, (3) whether the requesting spouse did not know and had no reason to know that the nonrequesting spouse would not pay the income tax liability, (4) the nonrequesting spouse's legal obligation, (5) significant benefit, (6) compliance with income tax laws, (7) abuse, and (8) mental or physical health. The Court has reviewed respondent's application of these factors to the facts and circumstances of this case.

1. Marital Status

Respondent will take into consideration whether the requesting spouse is separated or divorced from the nonelecting spouse. Rev. Proc. 2003-61, sec. 4.03(2)(a)(i), 2003-2 C.B. at 298.

Dr. Velez was deceased before petitioner's request for relief. This factor weighs in favor of relief. See Banderas v. Commissioner, supra.

2. Economic Hardship

Economic hardship applies if satisfaction of the tax liability in whole or in part "will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses." Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. The

Commissioner will determine a reasonable amount for basic living expenses that will vary according to the unique circumstances of the individual taxpayer. See Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), 2003-2 C.B. at 298. (referring to Rev. Proc. 2003-61, sec. 4.02(1)(c) (citing section 301.6343-1(b)(4)(i), Proced. & Admin. Regs.)).

Petitioner agrees that she would not suffer economic hardship, as that term is defined in section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., if she were required to pay the joint tax liability. Petitioner, however, citing Washington v. Commissioner, 120 T.C. 137 (2003), takes the position that respondent's use of that regulation to determine economic hardship is itself an abuse of discretion.

Petitioner, it seems, has misread Washington. The Court in Washington recognized that the Commissioner has adopted guidelines "As directed by section 6015(f)" to use when considering whether a taxpayer qualifies for relief under that provision. Id. at 147. The Court in fact used the Commissioner's guidelines[1] in reviewing the Washington case. See

---

[1]Rev. Proc. 2003-61, 2003-2 C.B. 296, supersedes Rev. Proc. 2000-15, 2000-1 C.B. 447, as used in Washington v. Commissioner, 120 T.C. 137 (2003). The guidelines set forth in Rev. Proc. 2003-61, supra, are effective for requests for relief filed on or after Nov. 1, 2003, and for requests for relief pending as of Nov. 1, 2003, for which no preliminary determination letter was issued as of Nov. 1, 2003. Rev. Proc. 2003-61, sec. 7, 2003-2 C.B. at 299.

also <u>Jonson v. Commissioner</u>, 118 T.C. 106, 125-126 (2002), affd. 353 F.3d 1181 (10th Cir. 2003). What the Court did not do in <u>Washington</u> was agree with the Commissioner's conclusion that the taxpayer had "offered no evidence to show that she would suffer an economic hardship if relief were denied." <u>Washington v. Commissioner</u>, <u>supra</u> at 149.

The taxpayer in <u>Washington</u> showed not only that her assets were meager, but also that she had to support a family of three at a "near poverty-level existence" (in her case, around $15,020). <u>Id.</u> at 150 n.7. The Court did not hold, as petitioner mistakenly concludes, that "only taxpayers with income at the poverty level" will qualify as suffering economic hardship. The regulation provides that the Commissioner will consider "any information provided by the taxpayer" that is relevant to the determination, including, but not limited to, the factors listed in the regulation. See sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs. The Court found as a fact in <u>Washington</u> that the taxpayer, on the record in that case, would suffer economic hardship if not relieved of liability. The Court finds that determining economic hardship by reference to section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is not arbitrary, capricious, or without sound basis in fact and is therefore not an abuse of discretion.

Since petitioner agrees that she would not suffer economic hardship, as that term is defined in section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., if she were required to pay the joint tax liability, the Court finds that this factor weighs against relief.

3. <u>Knowledge or Reason To Know</u>

The IRS will also consider whether the requesting spouse did not know or had no reason to know that the nonelecting spouse would not pay the liability. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(A), 2003-2 C.B. at 298. In the case of a properly reported but unpaid liability, the relevant knowledge is whether the taxpayer knew or had reason to know when the return was signed that the tax would not be paid. See <u>Washington v. Commissioner</u>, <u>supra</u> at 151; see also <u>Feldman v. Commissioner</u>, T.C. Memo. 2003-201, affd. 152 Fed. Appx. 622 (9th Cir. 2005).

The Court has found for respondent on this factor. Therefore, this factor weighs against relief. See <u>Beatty v. Commissioner</u>, T.C. Memo. 2007-167 (applying Rev. Proc. 2003-61 and finding that knowledge or reason to know weighs against relief); <u>Fox v. Commissioner</u>, T.C. Memo. 2006-22 (same); cf. <u>Levy v. Commissioner</u>, T.C. Memo. 2005-92 (applying Rev. Proc. 2000-15 and stating that lack of knowledge weighs in favor of relief while knowledge or reason to know weighs against relief).

4. Nonrequesting Spouse's Legal Obligation

This factor weighs in favor of the requesting spouse where the nonrequesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or an agreement. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv), 2003-2 C.B. at 298. There was no agreement which imposed a legal obligation on Dr. Velez to pay the outstanding income tax liabilities. This is a neutral factor.

5. Significant Benefit

Where the requesting spouse significantly benefited (beyond normal support) from the unpaid income tax liability, this is a factor against granting equitable relief. Rev. Proc. 2003-61, sec. 4.03(a)(v), 2003-2 C.B. at 299.

The facts and circumstances here show and the parties agree that petitioner did not receive any significant benefits, beyond normal support, from the failure to pay the tax. The Court concludes that this factor is neutral.

6. Compliance With Income Tax Laws

Petitioner was in compliance with her income tax obligations. This factor favors relief. See Chou v. Commissioner, T.C. Memo. 2007-102.

7. Presence of Abuse and Mental or Physical Health

The parties agree that there was no abuse of petitioner, and she has no mental or physical health problems. The absence of

these factors will not weigh against equitable relief.  See Rev. Proc. 2003-61, sec. 4.03(2)(b), 2003-2 C.B. at 299.

There are two factors weighing for and two factors weighing against relief for petitioner.  It is also clear from the record that petitioner was the victim of cruel circumstances.  Although the Court might not have denied relief in this case, the Court cannot conclude on this record that the IRS exercised its discretion arbitrarily, capriciously, or without sound basis in fact when it denied the requested relief under section 6015(f).

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered for respondent</u>.