T.C. Memo. 2012-11

UNITED STATES TAX COURT

FARZANA ZAHER, Petitioner, AND MOHAMMAD ZAHER, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5984-10.                    Filed January 10, 2012.

<u>Adam D. Christensen</u>, for petitioner.

Mohammad Zaher, pro se.

<u>Angela J. Kennedy</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  This proceeding was commenced under section
6015 for review of respondent's determination that petitioner is
not entitled to relief from joint and several liability for 2006
with respect to a Federal income tax return she filed with her
former spouse, intervenor.  The issue for decision is whether

petitioner is entitled to relief under section 6015(f).  All section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.  At the time the petition was filed, petitioner resided in Indiana.  At the time the notice of intervention was filed, intervenor resided in California.

Petitioner holds a bachelor's degree and graduated from dental school in 2004.  During the marriage, intervenor participated in various entrepreneurial activities, including owning and operating a gas station through a corporate entity that he owned and controlled, Zaher Enterprises, Inc.  Intervenor sold the gas station, and payments were made to intervenor during 2006.  Petitioner had no ownership or controlling interest in intervenor's business activities, and petitioner had no access to intervenor's business bank account.

Petitioner's involvement with the family finances was limited.  The couple had some joint accounts, but they also had separate personal and business accounts.  Intervenor generally was responsible for filling out bank forms, applying for loans, and ensuring that the couple's tax returns were prepared by their accountant and filed.  Petitioner was not abused by intervenor,

and petitioner did not suffer from mental or physical health problems.

During 2006, petitioner and intervenor lived together in Indiana with their two minor children. Petitioner was employed as a dentist. Intervenor realized capital gains of $587,760 from the sale of the gas station. After several loans associated with the gas station operations were paid and payment was made for work relating to a piece of investment property, the remainder of the capital gains from the gas station sale (gas station proceeds), approximately $315,000, was deposited in petitioner and intervenor's joint savings account. At the time, intervenor told petitioner that any taxes owed with respect to the capital gains would be paid from the 2006 net proceeds. No estimated tax payments were made with respect to the 2006 capital gains.

Petitioner and intervenor began having marital difficulties in December 2006. On August 1, 2007, only a week before petitioner filed for divorce, intervenor transferred the gas station proceeds from the couple's joint savings account to his business checking account. This transfer left the joint savings account with a balance of less than $1,000 and was made without petitioner's knowledge, although petitioner did learn of the transfer before filing for divorce.

A few days after transferring the gas station proceeds to his business account, intervenor wrote a check drawn on his

business account for $320,000 that was deposited in an account owned by one of his brothers. At the time, petitioner had no knowledge of the transfer to intervenor's brother.

On August 8, 2007, petitioner filed for divorce in the Circuit Court for Hamilton County, Indiana (circuit court), and requested that the circuit court issue a financial restraining order. On August 10, 2007, the circuit court issued a temporary financial restraining order prohibiting petitioner or intervenor from disposing of marital assets without written consent of both parties or permission of the circuit court.

Petitioner and intervenor began living apart in November 2007. On November 20, 2007, intervenor sent an email to petitioner stating that he had left a copy of the couple's 2006 joint tax return at her home for her to review and sign. From this email, petitioner learned for the first time that their 2006 tax return had not been filed by the due date and that there was a significant amount of tax due. Intervenor advised petitioner that they needed to sign and file the 2006 tax return and that he had set up an appointment for petitioner to discuss the tax return with their accountant.

In early December 2007, petitioner met with the accountant to review the 2006 tax return, which reported a tax due of $63,379. Petitioner then had her divorce attorney forward an unsigned copy of the 2006 joint return to intervenor's attorney

for intervenor's signature, because petitioner was afraid intervenor would make unauthorized changes to the 2006 tax return if she gave him a signed copy.

In a series of emails exchanged from November 2007 to January 2008, petitioner and intervenor discussed the 2006 tax return and how the tax due would be paid. Because petitioner no longer had access to the gas station proceeds, she urged intervenor to pay the tax. Intervenor responded that he did not have the money and suggested that they first file the return, then talk to the Internal Revenue Service (IRS) about a payment plan. Intervenor also said he was seeking another accountant to redo the 2006 return since he felt their accountant "went too much by the book".

In April 2008, in violation of the financial restraining order, intervenor directed his brother to distribute to other family members the gas station proceeds he had been holding for intervenor. Intervenor eventually signed the 2006 return as originally prepared and sent it back to petitioner in mid-2008. Petitioner signed the return for filing with the IRS. By this time, petitioner had learned of the transfer of the gas station proceeds to the bank account of intervenor's brother.

The 2006 joint return was filed on December 3, 2008. The return reported petitioner's wage income of $113,037, intervenor's capital gains of $587,760, rental losses of

$137,781, and taxable interest income of $35,073. After crediting petitioner's wage withholding of $15,866, the joint return showed tax due of $63,379, which petitioner and intervenor did not pay when they filed the return. The reported balance due for 2006 was solely attributable to intervenor.

Petitioner submitted a Form 8857, Request for Innocent Spouse Relief, to the IRS dated April 30, 2009. An IRS tax examiner reviewed petitioner's request under the process described in Rev. Proc. 2003-61, 2003-2 C.B. 296, and ultimately denied her relief under section 6015. A final determination letter dated December 10, 2009, was sent to petitioner. According to the IRS' workpaper, the denial was based, in large part, on the examiner's conclusion that petitioner had not established that she had a reasonable belief when the return was signed that the tax would be paid by intervenor and that petitioner would not suffer economic hardship if relief was not granted.

In March 2010, after several years of contentious proceedings, petitioner and intervenor's divorce became final. In April and May 2010, the circuit court issued orders regarding the couple's property division and child custody issues. Petitioner was granted full custody of the couple's two children.

As to the property division, the circuit court included the gas station proceeds in the marital estate because the court

ruled that intervenor had wrongfully transferred the funds from the couple's joint account just before petitioner filed for divorce. However, in the light of intervenor's greater financial contributions during the marriage and petitioner's future earning potential as a dentist, the circuit court awarded intervenor 55 percent and petitioner 45 percent of the marital assets. To effect this property division, the circuit court required petitioner to take on a much greater share of marital debt than intervenor.

The circuit court also ruled that intervenor had violated the financial restraining order on numerous occasions, including instructing his brother to distribute the gas station proceeds to other family members. Intervenor claimed that these distributions were made to repay loans that family members made to petitioner and intervenor during their marriage, but the circuit court ruled that no credible evidence supported the existence of these claimed family loans. The circuit court found it probable that the gas station proceeds had been distributed to family members in a scheme to funnel the money back to intervenor through "loans" and "gifts" from the same family members. The circuit court further concluded that intervenor had remained voluntarily unemployed during the entire course of the divorce proceedings to avoid "paying his fair share to raise his children" and had attempted to foist all his financial responsibilities on petitioner. The

divorce decree did not assign responsibility for the 2006 tax liability.

On November 1, 2010, intervenor filed his notice of intervention. Intervenor stated in his notice that he believed petitioner should be responsible for all of the 2006 income tax liability.

OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making this election, each spouse generally is jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). A requesting spouse, however, may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability under section 6015(c). Sec. 6015(a). If relief is not available under section 6015(b) or (c), a requesting spouse may seek equitable relief under section 6015(f). Because this case involves failure to pay tax shown on a return, rather than a deficiency, petitioner and respondent agree that petitioner is not entitled to relief under section 6015(b) or (c). See Washington v. Commissioner, 120 T.C. 137, 146-147 (2003).

Petitioner contends that she is entitled to relief under section 6015(f) from joint and several liability. Section 6015(f) gives the Commissioner the discretion to grant equitable relief

from joint and several liability if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)".

We have jurisdiction to review respondent's denial of petitioner's request for equitable relief under section 6015(f). See sec. 6015(e)(1). In doing so, we apply a de novo standard of review, as well as a de novo scope of review. Porter v. Commissioner, 132 T.C. 203, 210 (2009); Porter v. Commissioner, 130 T.C. 115, 117 (2008). Respondent disagrees, contending that the proper standard of review is abuse of discretion and that the proper scope of review is limited to the administrative record. We decline to revisit Porter. The presence of intervenor as a party in this case emphasizes the need to consider matters not in the administrative record. See Porter v. Commissioner, 132 T.C. at 219-220 (Gale, J., concurring). Petitioner bears the burden of proving that she is entitled to relief under section 6015(f). See Porter v. Commissioner, 132 T.C. at 210; see also Rule 142(a).

The Commissioner has outlined procedures for determining whether a taxpayer qualifies for equitable relief under section 6015(f) from joint and several liability. See Rev. Proc. 2003-61, supra. First, Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297-298, sets forth seven threshold conditions that must be satisfied before the Commissioner will consider a request for

equitable relief under section 6015(f).  There is no dispute that petitioner meets the threshold conditions.

If the threshold conditions are satisfied, the requesting spouse will ordinarily be granted relief if he or she then satisfies each requirement of the safe harbor provision found in Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298:  (1) On the date of the request for relief, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse; (2) on the date the requesting spouse signed the joint return, the requesting spouse had no knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability; and (3) the requesting spouse will suffer economic hardship if not granted relief.  Petitioner concedes that she does not satisfy the third condition.  Accordingly, petitioner does not qualify for relief under Rev. Proc. 2003-61, sec. 4.02.

When a requesting spouse satisfies the threshold conditions but fails to satisfy the conditions in Rev. Proc. 2003-61, sec. 4.02, he or she still may be eligible for relief under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for an underpayment.  Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-299, lists nonexclusive factors to be considered in determining whether to grant equitable relief under section 6015(f).  No single factor is determinative, all factors are to be

considered and weighed, and the list of factors is not intended to be exhaustive.  Id.  These listed factors are:  (1) Whether the requesting spouse is separated or divorced from the nonrequesting spouse; (2) whether the requesting spouse would suffer economic hardship if not granted relief; (3) whether the requesting spouse knew or had reason to know that the other spouse would not pay the tax; (4) whether the nonrequesting spouse has a legal obligation to pay the outstanding tax liability pursuant to a divorce decree or agreement; (5) whether the requesting spouse received a significant benefit (beyond normal support) from nonpayment of the tax liability; and (6) whether the requesting spouse has made a good-faith effort to comply with the tax laws for the taxable years following the year to which the request for relief relates. Other factors, if present, that favor equitable relief are:  (1) The nonrequesting spouse abused the requesting spouse, and (2) the requesting spouse was in poor mental or physical health on the date the return was signed or at the time relief was requested. However, the absence of these last two factors will not weigh against equitable relief.  Id.

The IRS denied petitioner's request for relief under section 6015(f) after reviewing and weighing these factors.  Our analysis of the relevant factors and circumstances is as follows.

Marital Status

The first factor considered is whether the requesting spouse is separated or divorced from the nonrequesting spouse. Petitioner and intervenor were separated at the time of her initial request for innocent spouse relief, and they have since divorced. Therefore, this factor weighs in favor of relief for petitioner.

Economic Hardship

The second factor considered is whether the requesting spouse will suffer economic hardship if relief is not granted. Petitioner concedes that she will not suffer economic hardship. This factor weighs against relief.

Knowledge or Reason To Know

The third factor considered is whether the requesting spouse had knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability. For this factor to weigh in favor of a requesting spouse, the requesting spouse must establish that (1) when he or she signed the return, he or she had no knowledge or reason to know the nonrequesting spouse would not pay the tax reported on the return; and (2) it was reasonable for him or her to believe that the nonrequesting spouse would pay the tax shown as due. See Collier v. Commissioner, T.C. Memo. 2002-144. Another relevant consideration is whether petitioner believed that intervenor would pay the taxes "reasonably promptly

after the filing of the joint return." See <u>Waldron v. Commissioner</u>, T.C. Memo. 2011-288; see also <u>Schepers v. Commissioner</u>, T.C. Memo. 2010-80; <u>Banderas v. Commissioner</u>, T.C. Memo. 2007-129. When petitioner signed the 2006 return reporting an unpaid balance due that was filed with the IRS in December 2008, petitioner knew that intervenor had transferred the gas station proceeds at least two times, first to intervenor's business account and then to intervenor's brother. Intervenor also told petitioner that he did not have the money. Furthermore, although intervenor never explicitly stated that he was not going to pay the tax, intervenor made it clear that he did not accept sole responsibility for the tax that was due. Considering these circumstances, it simply is not reasonable for petitioner to have believed, at the time she signed the 2006 return that was filed in late 2008, that intervenor would pay the tax that was due. This factor weighs against relief for petitioner.

<u>Nonrequesting Spouse's Legal Obligation</u>

This factor is concerned with whether the nonrequesting spouse has a legal obligation to pay the outstanding tax liability pursuant to a divorce decree or agreement. The parties agree that petitioner and intervenor's divorce decree does not determine who has the legal obligation to pay the tax liability. Therefore, this factor is neutral.

Significant Benefit

The fifth factor considered is whether the requesting spouse has received a significant benefit (beyond normal support) from the unpaid income tax liability.  Normal support is measured by the circumstances of the particular parties.  Porter v. Commissioner, 132 T.C. at 212; Estate of Krock v. Commissioner, 93 T.C. 672, 678-679 (1989).  At the administrative level, respondent determined that petitioner had not received a significant benefit beyond normal support.  Now, respondent contends that petitioner received a significant benefit beyond normal support because the circuit court included the misappropriated gas station proceeds in the marital estate subject to division, but not the tax liability, and petitioner received substantial assets in the divorce proceeding.

Before this controversy arose, intervenor was a successful entrepreneur, and petitioner was a practicing dentist.  In accordance with their level of income, petitioner and intervenor acquired substantial assets that had no connection with their failure to pay the 2006 tax liability.  The assets petitioner was awarded in the property division were not acquired as a result of the unpaid tax liability.  In addition, the property division was unequal, with petitioner receiving a smaller share than intervenor and shouldering more of the couple's debts than intervenor. Furthermore, the record contains no evidence that, as a result of

the unpaid tax liability, petitioner lived an unusually lavish lifestyle, made extravagant purchases, or took expensive vacations, typical hallmarks of significant benefits beyond normal support. See Washington v. Commissioner, 120 T.C. at 151; Wiener v. Commissioner, T.C. Memo. 2008-230. Accordingly, petitioner did not receive a significant benefit beyond normal support. This factor weighs in favor of relief.

Compliance With Income Tax Laws

This factor considers whether the requesting spouse has made a good-faith effort to comply with income tax laws since the year at issue. Respondent concedes that petitioner has made a good-faith effort to comply with the income tax laws since 2006. This factor weighs in favor of relief for petitioner. See Kruse v. Commissioner, T.C. Memo. 2010-270; Chou v. Commissioner, T.C. Memo. 2007-102.

Abuse and Mental or Physical Health

These factors consider whether the requesting spouse was abused by the nonrequesting spouse and whether the requesting spouse had mental or physical health problems at the time the return at issue was signed or at the time he or she requested relief. Petitioner concedes that she was not abused by intervenor nor has she had any mental or physical health problems. Therefore, these two factors are neutral.

Analysis

Considering all the factors discussed above, three weigh in favor of relief for petitioner, two weigh against relief, and three are neutral. However, our analysis does not end here. The factors listed in Rev. Proc. 2003-61, sec. 4.03 are nonexclusive, and other relevant factors are to be considered. We have allowed innocent spouse relief in cases where as few as two listed factors favored relief when there were other relevant factors to consider. See Bozick v. Commissioner, T.C. Memo. 2010-61 (the taxpayer was "browbeaten" into signing the joint tax return); Wiener v. Commissioner, supra (the taxpayer was in her 70s and in bad health, and her husband had consistently misled her about their tax problems).

Petitioner argues that the facts and circumstances regarding intervenor's sale of the business that resulted in the tax liability and his subsequent evasiveness and deceit concerning the funds that were to be used to pay the tax liability weigh in favor of granting relief under section 6015(f). Intervenor misappropriated the gas station proceeds, which could and should have been used to pay the 2006 tax liability. Intervenor then went to great lengths over several years to place the gas station proceeds beyond petitioner's reach, effectively preventing petitioner from using these funds herself to pay the 2006 tax liability. Equitable relief is more likely to be appropriate

where concealment, overreaching, or other wrongdoing on the part of the nonrequesting spouse is present.  See <u>Van Arsdalen v. Commissioner</u>, T.C. Memo. 2007-48 (citing <u>Hayman v. Commissioner</u>, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228). Intervenor's egregious misconduct weighs in favor of relief for petitioner, and respondent acknowledged as much at trial.

Taking into account all of the facts and circumstances, we hold that petitioner is entitled to relief from joint and several liability under section 6015(f) with respect to any unpaid Federal income tax liability for 2006.  We have considered the arguments of the parties not specifically addressed in this opinion.  They are either without merit or irrelevant to our decision.  To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.